## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

JAMES FALLON,

       Plaintiff,

v.                                            Civ. No. 13-00176 MV/ACT

CTSC, LLC, a foreign corporation,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on defendant CTSC, LLC's Motion to Dismiss Plaintiff's Complaint [Doc. 7].  The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the motion to dismiss is well taken in part and will be granted in part.

## BACKGROUND

On October 10, 2012, plaintiff James Fallon filed his Complaint for Employment Discrimination on the Basis of Age, Disability, Serious Medical Condition and Retaliation, in the Second Judicial District Court, State of New Mexico.  *See* Notice of Removal, Exh. B. ("Compl.").  On February 22, 2013, defendant removed the case to this Court on the ground of diversity of citizenship jurisdiction.  *See id.* ¶ 13.

In his complaint, plaintiff alleges that defendant violated the New Mexico Human Rights Act ("NMHRA"), N.M. Stat. Ann. § 28-1-7(A), by (1) discriminating against plaintiff in the terms and conditions of his employment on the basis of age; (2) discriminating against plaintiff in the terms and conditions of his employment on the basis of disability; and (3) retaliating against plaintiff in the terms and conditions of employment.  *See* Compl. ¶¶ 26, 29-31, 35.  The

complaint contains the following allegations in support of these claims.

Plaintiff began working for defendant in 2007.  *See id.* ¶ 6.  In May 2010, plaintiff was given a positive evaluation.  *See id.* ¶ 8.  Plaintiff's previous evaluations had been average or above average.  *See id.*  In Fall 2010, plaintiff was demoted without any warning or notice.  *See id.* ¶ 9.  At the time of his demotion, plaintiff was 63 years old, which was the oldest age of any employee in defendant's Albuquerque office.  *See id.* ¶ 7.  Plaintiff was replaced by a younger male, identified in the complaint as Mr. Keefner ("Keefner"), who was in his early forties.  *See id.* ¶ 10.

In November 2010, Keefner began accusing plaintiff of having a body odor problem.  *See id.* ¶ 12.  Keefner placed plaintiff on probationary status and threatened to terminate plaintiff over this perceived body odor issue.  *See id.*  Plaintiff's coworkers indicted that they did not notice that plaintiff had a body odor problem.  *See id.* ¶ 13.  Plaintiff's physician provided plaintiff with medical documentation indicating that plaintiff did not have a body odor issue.  *See id.*  Notwithstanding the foregoing, plaintiff began bringing extra clothes to work and showering mid-day.  *See id.* ¶ 14.  Keefner nonetheless continued to harass plaintiff about body odor by saying Keefner smelled something "rank" whenever plaintiff was present.  *See id.*

Plaintiff reported Keefner's conduct to defendant's human resources department and notified the department that Keefner was subjecting plaintiff to a hostile work environment.  *See id.* ¶ 15.  The human resources department informed plaintiff that his claims were unsubstantiated and told plaintiff that he was "paranoid."  *See id.*  Keefner continued to harass plaintiff, isolate plaintiff from plaintiff's subordinates, and interfere with plaintiff's duties.  *See id.* ¶ 16.

In April 2011, "Plaintiff was written up for not attending a meeting that was for employees who had signed up for defendant's health insurance plan.  Plaintiff came to the meeting[,] but

2

since Plaintiff did not have [CTSC's] health insurance, Plaintiff left with several other employees."  *Id.* ¶ 17.

As a result of the alleged hostile work environment, plaintiff began suffering from depression and anxiety.  *See id.* ¶ 18.  Plaintiff sought medical treatment for his depression.  *See id.*  On May 6, 2011, plaintiff requested an accommodation for his depression.  *See id.* ¶ 19.

Less than one month after requesting the accommodation, plaintiff was given a final warning for allegedly failing to follow Keefner's instructions.  *See id.* ¶ 20.  Just one week earlier, however, Keefner had told plaintiff that plaintiff was doing a "good job."  *Id.*  On June 10, 2011, plaintiff was terminated for allegedly missing a meeting.  *See id.* ¶ 21.  Plaintiff denies that he missed any meetings.  *See id.*

Plaintiff timely filed a charge of discrimination with the New Mexico Human Rights Commission.  *See id.* ¶ 5.  Prior to filing this lawsuit, plaintiff received a Notice of Right to Sue letter from the New Mexico Human Rights Commission.  *See id.*

## **STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) (citation omitted). When considering a 12(b)(6) motion, the Court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  *See Smith v. United States*, 561 F.3d 1090, 1097-98 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010).

To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A plaintiff must "nudge[ his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. *Twombly*, 550 U.S. at 570.

The Supreme Court has identified two principles underlying the Rule 12(b)(6) standard: (1) when legal conclusions are involved in the complaint "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions," *Iqbal*, 556 U.S. at 678; and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss," *id.* at 679. Thus, mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555 (citation omitted). Accordingly, a district court must disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

The Tenth Circuit has explained that plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570); *accord Khalik*, 671 F.3d at 1191. The plausibility standard is "a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions . . . , which the Court stated will not do." *Robbins*, 519 F.3d at

1247 (internal quotation marks and citations omitted); *accord Khalik*, 671 F.3d at 1191. Therefore, while the plausibility standard does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In the context of employment discrimination cases, the Tenth Circuit has suggested that plausibility may require less specific pleadings, "because in [these] cases where the employers are large corporations, the employee may not know who actually fired [him] or for what reason." *Khalik*, 671 F.3d at 1190; *see also Hunt v. Central Consolidated Sch. Dist.*, No. 11-CV-1144 JB/WDS, 2013 WL 3214928, at *28 (D.N.M. June 12, 2013).

## DISCUSSION

In support of its motion to dismiss, defendant contends that plaintiff fails to state claims under the NMHRA for age discrimination, discrimination based upon disability, and retaliation. The Court will address each of these arguments in turn.

I.    NMHRA Age Discrimination Claim.

The Tenth Circuit has explained that "the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim" under Rule 12(b)(6). *Khalik*, 671 F.3d at 1192 (citing *Swierkiewicz v. Sorema NA*, 534 U.S. 506, 515 (2002); *Twombly*, 550 U.S. at 570). Thus, the Court begins its analysis of defendant's motion to dismiss the age discrimination claim by discussing the elements of a prima facie case. *Cf. id.* Under the NMHRA, it is unlawful for "an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation,

terms, conditions or privileges of employment against any person otherwise qualified because of . . . age."   N. M. Stat. Ann. § 28-1-7(A).   The New Mexico Supreme Court has applied the evidentiary burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to NMHRA employment discrimination claims based upon indirect evidence of discriminatory intent.   *See Smith v. FDC Corp.*, 787 P.2d 433, 436 (N.M. 1990).   Under *McDonnell Douglas*, a plaintiff may establish a prima facie case of wrongful termination by proving that (1) the plaintiff is a member of a protected group, which, in the context of an age discrimination claim includes persons over forty years of age; (2) the plaintiff was qualified to continue in his position; (3) the employer removed the plaintiff from his position; and (4) the plaintiff's position was filled by someone not a member of the protected class.   *See Cates v. Regents of the N.M. Institute of Mining & Tech.*, 954 P.2d 65, 70 (N.M. 1998).[1]

Having established the prima facie elements that guide the Court's evaluation of the motion to dismiss, the Court next determines whether the complaint states a plausible claim for relief on the basis of age discrimination under the NMHRA.   *Cf. Khalik*, 671 F.3d at 1192. "While . . . the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim," "the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint" in order to withstand dismissal.   *Khalik*, 671 F.3d at 1192 (citing *Swierkiewicz*, 534 U.S. at 515; *Twombly*, 550 U.S. at 570).   Indeed, the Supreme Court has explained that to withstand a Rule 12(b)(6) motion to dismiss a plaintiff need not allege all of the facts that would be necessary to support his claim at the trial stage, but rather need only allege

---

[1]   "[The *McDonnell Douglas*] framework[] . . . is not a required method of proof; it is only a tool to focus the issues and to reach the ultimate issue of whether the employer's actions were motivated by impermissible discrimination."   *Smith*, 787 P.2d at 437.   "A prima facie case may also be made out through other means."   *Id.*

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555 (citation omitted); *Khalik*, 671 F.3d at 1193.

Defendant argues that plaintiff's age discrimination claim must fail because "Plaintiff's allegations are the type of 'conclusory and formulaic recitations' [that must be] disregarded." Mem. in Support of Mot. to Dismiss ("Mem.") at 5. Defendant also contends that plaintiff "merely refers to the factual allegations contained in the prior twenty-four paragraphs of his [general allegations in the] Complaint," and "[plaintiff] makes absolutely no attempt to show which [of these] facts support his age discrimination claim or how they support it." *Id.* Furthermore, defendant maintains that "Plaintiff failed to allege each and every element of his cause of action for age discrimination[ and] seems to base his age discrimination claim solely on the fact that he is 63 years old and that his employment was terminated." *Id.* at 5-6.

The Supreme Court has held that mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice to withstand a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 555. In support of his first count for age discrimination, plaintiff alleges that "Defendant has discriminated against Plaintiff in the terms and conditions of his employment on the basis of his age in violation of the NMHRA." Compl. ¶ 26. This allegation is conclusory and not entitled to consideration. *Cf. Twombly*, 550 U.S. at 555. Plaintiff further alleges, however, that "Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24 of this Complaint with the same force and effect as if set forth herein." Compl. ¶ 25. By virtue of this incorporation of the preceding paragraphs into the first count, plaintiff also alleges the following non-conclusory facts: (1) at the time of his termination, plaintiff was 63 years old, which made him the oldest employee in the Albuquerque office of CTSC, *see id.* ¶ 7; (2) in May 2010, plaintiff was given a positive evaluation and plaintiff's

previous evaluations had been average or above average, *see id.* ¶ 8; (3) in Fall 2010, plaintiff was demoted without any warning or notice, *see id.* ¶ 9; and (4) plaintiff was replaced by a younger male, Keefner, who was in his early forties, *see id.* ¶ 10.   These allegations, if taken as true, are sufficient to "nudge[ Plainitff's] claims across the line from conceivable to plausible."   *Twombly*, 550 U.S. at 570.   Thus, the Court concludes that plaintiff has alleged facts sufficient to render his age discrimination claim plausible on its face, and the Court therefore denies defendant's motion to dismiss the claim pursuant to Rule 12(b)(6).   *Cf. Fields v. Dep't of Public Safety*, 911 F. Supp. 2d 373, 384-85 (M.D. La. 2012) (denying motion to dismiss for failure to state a claim where the plaintiff contended that she was subject to racial discrimination because the plaintiff alleged that her request for a transfer from a stressful cell block assignment was denied while the request of a Caucasian female was granted).

The Court is not persuaded by the defendant's argument that plaintiff's general reference to the allegations contained in paragraphs one to twenty-four is fatal to his claim.   Defendant complains that plaintiff "makes absolutely no attempt to show which of [these] facts support his age discrimination claim or how they support it."   Mem. at 5.   Defendant argues that in a Memorandum Opinion and Order entered in *Chatterton v. Summit Food Services, LLC*, No. 12-CV-00082 (D.N.M. Oct. 23, 2012) (Doc. 15) (Herrera, J.), "[the] Court previously held that style of pleading [of merely referring to previous paragraphs in the complaint without demonstrating which facts support a particular count] was insufficient to state a claim under the [plausibility] standard."   Reply at 2.

In *Chatterton*, the district court granted the defendant's motion to dismiss on the ground the complaint "[did] not clearly set forth an exhaustive list of Plaintiff's claims, including the elements of each of her causes of action, let alone delineate which factual allegations support

which of [the Plaintiff's] claims." *Chatterton*, slip op. at 11.   Rather, the *Chatterton* complaint only "cite[d] one or more statutes and separate[ly] set forth several pages[] worth of factual allegations, without any attempt to show how the latter purport[ed] to support the former."   *Id.*

  *Chatterton*, however, is distinguishable.   In *Chatterton*, the plaintiff both (1) failed to set forth an exhaustive list of the plaintiff's claims and (2) neglected to identify which factual allegations supported the plaintiff's claims.   *See id.*   In contrast, the complaint here sets forth an exhaustive list of the plaintiff's causes of action.   Furthermore, although the plaintiff here incorporates the factual allegations contained in the first twenty-four paragraphs of the complaint into his first count, without identifying the specific factual allegations that support the count, the Court concludes that plaintiff's general reference to those twenty-four paragraphs—when paired with a specific list of plaintiff's claims—is sufficient to put defendant on notice of the claims.   *Cf.* *Hunt v. Central Consol. Sch. Dist.*, No. 11-CV-1144 JB/WDS, 2013 WL 3214928, at *66 (D.N.M. June 12, 2013) (recognizing "how difficult the incorporation of the Complaint's preceding 105 paragraphs [into the count alleging retaliation] makes determining what the alleged retaliatory action is," but nonetheless sifting through the allegations to determine "the reasonable possibilities").   Furthermore, with respect to the plaintiff's age discrimination claim, the Court readily is able to glean which specific factual allegations in the first twenty-four paragraphs of the complaint support the claim.   Thus, the Court concludes that the complaint provided defendant with notice of the age discrimination claim, and that defendant's argument to the contrary is not persuasive.[2]

---

[2]   For the same reasons, the Court also rejects defendant's argument that the incorporation of facts from preceding paragraphs into the second and third counts is fatal to Plaintiff's claim.   *See* Mem. at 6-7, 8.

II.   NMHRA Disability Discrimination Claim.

The court begins its analysis of defendant's motion to dismiss the disability discrimination claim by discussing the elements that plaintiff may prove to establish a prima facie case.   *Cf. Khalik*, 671 F.3d at 1192 ("the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim") (citations omitted).   Under the NMHRA, it is unlawful for "an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of . . . physical or mental handicap or serious medical condition."   N.M. Stat. Ann. § 28-1-7(A).

A plaintiff may bring a NMHRA disability claim based upon a wrongful discharge, failure to accommodate, or hostile work environment theory.   The New Mexico Supreme Court has relied upon the Tenth Circuit's articulation of the elements of a prima facie unlawful termination case under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213 (1994), a federal statute prohibiting discrimination against persons with a disability, and applied those same elements to a NMHRA disability claim.   *See Trujillo v. N. Rio Arriba Elec. Co-op, Inc*., 41 P.3d 333, 338 (N.M. 2001) (citation omitted).[3]   Under this standard, a plaintiff must demonstrate "'(1) that he [or she] is a disabled person within the meaning of the [statute]; (2) that he [or she] is

---

[3]   The New Mexico Supreme Court has previously indicated that it is appropriate to rely upon federal authorities for guidance in analyzing a claim under the NMHRA, with the following reservation:   "Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own.   Our analysis of this claim is based on the New Mexico statute and our interpretation of our legislature's intent, and, by this opinion, we are not binding New Mexico law to interpretations made by the federal courts of the federal statute."   *Smith v. FDC Corp.*, 787 P.2d 433, 436 (N.M. 1990); *accord Trujillo*, 41 P.3d at 338 (citation omitted).

qualified . . . ; and (3) that the employer terminated him [or her] because of the disability.'"   *Id.*

(quoting *White v. York Int'l Corp.*, 45 F.3d 357, 360-61 (10th Cir. 1995)) (additional citation

omitted).   The Tenth Circuit also has held that a plaintiff who is "disabled"[4] may state a disability

discrimination claim under a hostile work environment theory by alleging "that the workplace

[was] permeated with discriminatory intimidation, ridicule, and insult, [which was] sufficiently

severe or pervasive to alter the conditions of the victim's employment and create an abusive

working environment."   *Penry v. Fed. Home Loan of Topeka*, 155 F.3d 1257, 1261 (10th Cir.

1998), *cert. denied*, 526 U.S. 1039 (1999); *see also Lanman v. Johnson Co.*, 393 F.3d 1151, 1155

(10th Cir. 2004).   A plaintiff meeting the definition of "physical or mental handicap" under the

NMHRA may also bring a failure to accommodate claim, because under the Act it is "an unlawful

discriminatory practice for an employer 'to refuse or fail to accommodate to an individual's

physical or mental handicap or medical condition, unless such accommodation is unreasonable or

an undue hardship.'"   *Trujillo v. N. Rio Arriba Elec. Co-op, Inc*., 41 P.3d 333, 339-40 (N.M.

2001) (quoting N.M. Stat. Ann. § 28-1-7(J)).

Having established the elements of a prima facie unlawful discharge, hostile work

environment, and failure to accommodate claim, the Court next determines—using the elements as

guidance—whether the complaint states a plausible disability-based discrimination claim.   *Cf.*

*Khalik*, 671 F.3d at 1192.   The exact nature of plaintiff's disability claim is not readily apparent

on the face of the complaint.   It is unclear whether plaintiff brings a disability claim based upon

actual physical or mental impairment, whether his claim is based upon being regarded as having an

impairment, or whether plaintiff brings claims under both theories.   Plaintiff alleges in his

---

[4]   *Chan v. Sprint Corp.*, 351 F. Supp. 2d 1197, 1209 (D. Kan. 2005) ("[i]n order to present a viable
hostile work environment claim, . . . Plaintiff must be disabled under the ADA") (citing *Shaver v.
Indep. Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003))

complaint that he is a "qualified individual with a disability/serious medical condition under the NMHRA," Compl. ¶ 30, but elsewhere in the complaint indicates that his physician documented that he did not have a body odor issue, *see id.* ¶ 13, and that defendant "discriminated against [him] by perceiving him as having a disability (body odor issue)," *id.* ¶ 31; *see also* Mem. at 2.   Plaintiff also alleges that he developed an actual disability—depression and anxiety—as a result of his hostile work environment.   *See* Compl. ¶¶ 18, 19, 31.

In addition, it is unclear whether plaintiff's perceived disability claim is premised upon defendant taking adverse employment actions against plaintiff or upon defendant creating a hostile work environment for plaintiff.   Plaintiff alleges that Keefner placed plaintiff on probationary status and threatened to terminate plaintiff over his perceived body odor issue, *see id.* ¶ 12, but plaintiff also alleges that he notified defendant's human resources department that Keefner was subjecting him to a hostile work environment, *see id.* ¶ 15.

Consistent with its obligation to view the allegations in the complaint in the light most favorable to plaintiff, *see Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010), the Court interprets the complaint broadly and assumes that plaintiff asserts two disability-based claims:   (1) a claim that defendant regarded plaintiff as having a physical handicap as a result of plaintiff's perceived body odor issue, and (2) a claim that defendant failed to reasonably accommodate plaintiff's actual mental handicap of depression. The Court also assumes that plaintiff brings his perceived disability claim pursuant to both a disparate treatment theory and a hostile work environment theory.

Regardless of the type of disability claim plaintiff alleges or the theory upon which plaintiff relies, plaintiff must establish, as a threshold matter, that he has a "physical or mental handicap" within the meaning of the NMHRA.   *See Keller v. Bd. of Educ.*, 182 F. Supp. 2d 1148,

1154-55 (D.N.M. 2001) ("To establish a *prima facie* case of disability discrimination under the ADA or NMHRA, plaintiff must show that she is disabled") (citations omitted); *Trujillo*, 41 P.3d at 338 (looking to federal law for guidance in interpreting a NMHRA claim and indicating that the first element of a prima facie case under the ADA requires a plaintiff to establish that he or she is a disabled person within the meaning of the ADA) (citation omitted); *Steel v. Thiokol*, 241 F.3d 1248, 1254 (10th Cir. 2001) ("In order to make out a claim under the [ADA], a plaintiff must demonstrate as a threshold matter that he is a 'qualified individual with a disability'") (citing 42 U.S.C. § 12112(a)); *compare Selenke v. Med. Imaging*, 248 F.3d 1249, 1264 (10th Cir. 2001) ("a disability is not a prerequisite to an ADA-retaliation claim").   The Court first determines whether plaintiff has stated a plausible claim that he is an individual with a "handicap" on the basis of being regarded as having a body odor issue, and next determines whether plaintiff has stated a plausible claim that he is a member of a protected group on the basis of defendant's failure to accommodate his actual disability of depression and anxiety.

The NMHRA defines "physical or mental handicap" as "a physical or mental impairment that substantially limits one or more of a person's major life activities."   N.M. Stat. Ann. § 28-1-2(M).   The NMHRA further provides that a "person is also considered to be physically or mentally handicapped if the person . . . is regarded as having a physical or mental handicap."   *Id.* To state a NMHRA claim based upon a perceived disability, a plaintiff must allege plausible facts showing that the defendant "'mistakenly believe[d] that [the plaintiff] ha[d] a physical impairment that substantially limit[ed] one or more major life activities.'"   *Keller*, 182 F. Supp. 2d at 1156 (applying the standard of perceived disability to the plaintiff's NMHRA and ADA discrimination claims) (quoting *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 499 (10th Cir. 2000) (citations omitted); *see also* N.M. Stat. Ann. § 28-1-2(M).

13

In support of his perceived disability claim, plaintiff makes the following conclusory allegations that he has a disability within the meaning of the NMHRA:   (1) "Plaintiff is a qualified individual with a disability/serious medical condition under the NMHRA"; and (2) "Defendant discriminated against Plaintiff by perceiving him as having a disability (body odor issue)." Compl. ¶¶ 30, 31.   Because labels, conclusions, and a formulaic recitation of the elements of a cause of action are not sufficient to withstand a motion to dismiss, *see Twombly*, 550 U.S. at 555, the Court disregards these allegations.   The Court is left with the following factual allegations relevant to plaintiff's perceived disability claim, which the Court takes as true for purposes of deciding the motion to dismiss:   (1) "In November of 2010, Keefner began accusing Plaintiff of having a body odor problem," Compl. ¶ 12; (2) "Keefner put Plaintiff on a probationary status and threatened to terminate Plaintiff over the body odor issue," *id.*; (3) "Nobody told Plaintiff he had a body odor issue[,] and "Plaintiff's doctor provided Plaintiff with medical documentation that Plaintiff did not have a body odor issue," *id.* ¶ 13; and (4) "Plaintiff began bringing in extra clothes to work and showering mid day," but "Keefner continued to harass Plaintiff about the body issue," "isolate [plaintiff] from his subordinates," and "interfere with [plaintiff's] duties," *id.* ¶¶ 14, 16.

Missing from the complaint, however, is any allegation that Keefner believed the perceived body odor issue impacted one or more of plaintiff's "major life activities."   *See* N.M. Stat. Ann. § 28-1-2(M) (defining a "physical or mental handicap" as an "impairment that substantially limits one or more of a person's major life activities").   The NMHRA defines "major life activities" to include "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."   *Id.* § 28-1-2(N).   None of the allegations suggest that Keefner believed the perceived body odor problem affected plaintiff's abilities in these areas.

14

Furthermore, the complaint does not contain any allegations indicating that Keefner believed that the perceived body odor problem was "substantially limit[ing]" within the meaning of the NMHRA. "Not every impairment that affects an individual's major life activities is a substantially limiting impairment." *Ellenberg v. N.M. Military Inst.*, 572 F.3d 815, 821 (10th Cir.), *cert. denied*, 558 U.S. 1091 (2009). Federal authorities construing the ADA, *see supra* note 3, indicate that an impairment is substantially limiting if a person is (1) "'[u]nable to perform a major life activity that the average person in the general population can perform'"; or (2) "'[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.'" *Steel*, 241 F.3d at 1254 (quoting 29 C.F.R. § 1630.2(j)(1)). Courts also consider the "nature and severity of the impairment," "[t]he duration or expected duration of the impairment," and "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* (citing 29 C.F.R. § 1630.2(j)(2)). The complaint, however, does not contain any allegation that Keefner believed plaintiff was unable to perform a major life activity that the average person could perform or that plaintiff was significantly restricted in his ability to perform a major life activity. *See Steel*, 241 F.3d at 1254 (citing 29 C.F.R. § 1630.2(j)(1)). The complaint is also silent regarding Keenfer's belief as to the nature and severity, duration, and long-term impact of the perceived disability. *See id.* (citing 29 C.F.R. § 1630.2(j)(2)).

Having reviewed the allegations in the complaint, the Court concludes that plaintiff has not nudged the claim that Keefner regarded plaintiff as having a body odor issue that substantially impacted a major life activity across the line from possible to plausible. *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, the Court concludes that plaintiff's complaint fails to

state a plausible claim that plaintiff is a member of a protected group on the basis of being regarded as having a physical or mental handicap.

The Court next determines whether plaintiff states a plausible claim that he is a member of a protected group on the basis of having an actual physical or mental handicap. Plaintiff alleges that as a result of his hostile work environment he developed depression and anxiety. *See* Compl. ¶ 18. Plaintiff further alleges that he requested an accommodation for his depression. *See id.* ¶ 19. As discussed, it is an unlawful discriminatory practice for an employer to fail to accommodate to an individual's mental handicap, unless such accommodation is unreasonable or an undue hardship. *See Trujillo v. N. Rio Arriba Elec. Co-op, Inc*., 41 P.3d 333, 339-40 (N.M. 2001) (quoting N.M. Stat. Ann. § 28-1-7(J)). To state a failure to accommodate claim, a plaintiff must allege plausible facts indicating that he has a "mental handicap" within the meaning of the NMHRA. *See id.* (holding that "the failure to accommodate claim must fail because[ plaintiff] failed to demonstrate that he had a medical condition which is a necessary predicate for an accommodation request"). As discussed, the NMHRA defines a mental handicap as an impairment that "substantially limits one or more of a person's major life activities." N.M. Stat. Ann. § 28-1-2(M). Unless the complaint plausibly alleges that plaintiff's depression and anxiety substantially limited one or more of his major life activities, plaintiff cannot establish that he is a person with a handicap within the meaning of the NMHRA, which is a threshold requirement of a failure to accommodate claim. *Cf. Trujillo*, 41 P.3d at 339-40.

The complaint contains only three factual allegations in support of plaintiff's failure to accommodate claim: (1) "As a result of the hostile work environment, Plaintiff began suffering from depression and anxiety," Compl. ¶ 18; (2) "[o]n May 6, 2011, Plaintiff requested an accommodation for his depression," *id.* ¶ 19; and (3) "Defendant . . . den[ied] his requested

accommodation (depression/anxiety)," *id.* ¶ 31.   Missing from the complaint, however, is any allegation that plaintiff's depression or anxiety "substantially limited" one or more of plaintiff's "major life activities."   N.M. Stat. Ann. § 28-1-2(N) ("'[m]ajor life activities' means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working").   Also missing from the complaint is any allegation that, assuming plaintiff's depression impacted a major life activity, that the impact was "substantially limit[ing]."   *See Ellenberg*, 572 F.3d at 821 ("Not every impairment that affects an individual's major life activities is a substantially limiting impairment.").

Plaintiff does not allege, for example, that his depression or anxiety impacted his ability to care for himself or work, *see* N.M. Stat. Ann. § 28-1-2(N), or that he was unable to perform or was significantly restricted in his ability to perform a major life activity that the average person in the general population could perform, *see Steel*, 241 F.3d at 1254 (29 C.F.R. § 1630.2(j)(1)).   The complaint also does not contain any allegations regarding the nature and severity of plaintiff's depression or anxiety, the duration or expected duration of his depression or anxiety, or the permanent or long term impact of his impairment.   *Cf. id.* (citing 29 C.F.R. § 1630.2(j)(2)). Given these omissions, the Court concludes that plaintiff has failed to nudge his claim that he had a mental handicap across the line from possible to plausible.   *Cf. Trujillo*, 41 P.3d at 340 (dismissing failure to accommodate claim because plaintiff did not demonstrate that he had a medical condition).

For the foregoing reasons, the Court concludes that the allegations in plaintiff's complaint, even when taken as true and construed in plaintiff's favor, do not plausibly state a NMHRA discrimination claim based upon either a perceived body odor disability or a failure to accommodate an actual disability of depression or anxiety.   The Court therefore grants

defendant's motion to dismiss plaintiff's NMHRA disability claims without prejudice.[5]

III.     NMHRA Retaliation Claim.

The court begins its analysis of the motion to dismiss the retaliation claim by discussing the elements that plaintiff may prove to establish a prima facie case.  *Cf. Khalik*, 671 F.3d at 1192 ("the elements of each alleged cause of action help to determine whether plaintiff has set forth a plausible claim").   Under the NMHRA, it is unlawful for an employer to "engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice or has filed a complaint, testified or participated in any proceeding under the Human Rights Act."   N.M. Stat. Ann. § 28-1-7(I)(2).   To establish a prima facie case, a plaintiff asserting a NMHRA retaliation claim must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two events.   *See Ocana v. Am. Furniture Co.*, 91 P.3d 58, 72 (N.M. 2004) (citation omitted).

Having established the elements of a prima facie NMHRA retaliation case that guide the Court's consideration of the motion to dismiss, the Court next determines whether the complaint states a plausible claim.   *Cf. Khalik*, 671 F.3d at 1192.   With respect to the first element of a prima facie case, the Court concludes that plaintiff plausibly alleges that he engaged in two protected activities:   (1) plaintiff reported Keefner's conduct to the human resources department and informed the department that Keefner was subjecting him to a hostile work environment, *see* Compl. ¶ 15; and (2) "[o]n May 6, 2011, Plaintiff requested an accommodation for his

_____

[5]   Because the Court grants the motion to dismiss on the dispositive ground that Plaintiff has failed to state a plausible claim that he was a member of a protected group under the NMHRA, the Court need not decide whether Plaintiff has failed to state a plausible claim with respect to any of the other elements of a disability-based discrimination claim.   *See supra* pp. 10-11 (describing the elements of unlawful termination, hostile work environment, and failure to accommodate claims).

depression," *id.* ¶ 19.   Reporting discriminatory conduct and requesting an accommodation for a physical or mental handicap are protected activities.   *See Ocana*, 91 P.3d at 72 (protected activities include formal complaints as well "informal protests of discriminatory employment practices, including making complaints to management"); *Otero v. N.M. Corrections Dep't*, 640 F. Supp. 2d 1346, 1356 (D.N.M. 2009) ("a request for accommodation in and of itself can be a protected activity under the ADA") (citing *Coleman v. BCBS*, 487 F. Supp. 2d 1225 (D. Kan. 2007)).[6]   Thus, plaintiff has stated a plausible claim that he engaged in protected activities.

With respect to the second element of a prima facie case, plaintiff also alleges plausible facts indicating that he suffered at least one adverse employment action.   Plaintiff alleges that "[o]n June 10, 2011, Plaintiff was terminated for allegedly missing a meeting."   Compl. ¶ 21. "An adverse employment action occurs when an employer imposes a tangible, significant, harmful change in the conditions of employment."   *Ulibarri v. State of N.M. Corr. Academy*, 131 P.3d 43, 50 (N.M. 2006) (citation omitted).   "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998), *cited in Ulibarri*, 131 P.3d at 50. Termination expressly falls within this definition.   *See id.*   Thus, the Court concludes that plaintiff has stated a plausible claim that satisfies the second element of a prima facie case.

Plaintiff also alleges that "[i]n April 2011, Plaintiff was written up for not attending a meeting," Compl. ¶ 17, and "[i]n less than one month of requesting the accommodation, Plaintiff was given a final warning for allegedly failing to follow his supervisor Keefner's instructions," *id.*

---

[6]   As the Court has previously stated, a district court may look to federal civil rights adjudication for guidance in interpreting the NMHRA.   *See supra* note 3.

¶ 20.   Although warning letters and reprimands can constitute adverse employment actions if they adversely affect the terms and conditions of a plaintiff's employment, s*ee Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998); *see also Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005), a plaintiff must allege plausible facts showing how the reprimand or warning had an adverse effect on his or her employment.   A reprimand may adversely affect the terms and conditions of employment if, for example, it affects the likelihood that the plaintiff will be terminated, undermines the plaintiff's current position, or affects the plaintiff's future employment opportunities.   *See id.* (citing *Roberts*, 149 F.3d at 1104); *accord Tapia v. City of Albuquerque,* No. 05-2028, 2006 WL 308267, *4 (10th Cir. Feb. 10, 2006).   The complaint here, however, does not contain any factual allegations showing that the reprimand or warning increased the likelihood that plaintiff would be terminated, undermined his current position, or affected his future employment opportunities.   Thus, the Court concludes that plaintiff has not stated a plausible claim that he suffered an adverse employment action on the basis of the written reprimand or final warning.

The third element of a prima facie retaliation case requires a plaintiff to establish that there is a causal connection between the protected activity and the adverse employment action.   *See Ocana*, 91 P.3d at 72.   The allegations in plaintiff's complaint are sparse on the question of a causal connection between a protected activity and an adverse employment action.   Plaintiff alleges two protected activities:   (1) reporting Keefner's alleged discriminatory conduct to the human resources department, *see* Compl. ¶ 15; and (2) requesting an accommodation for his depression, *see id.* ¶ 19.   Plaintiff alleges three possible adverse employment actions:   (1) the April 2011 written reprimand for not attending a meeting, *see id.* ¶ 17; (2) the final warning for allegedly failing to follow Keefner's instructions, *see id.* ¶ 20; and (3) the June 10, 2011,

termination, *see id.* ¶ 21.[7]   The Court first determines whether the allegations are sufficient to state a plausible causal connection between any of the alleged adverse employment actions and plaintiff's protected activity of reporting of Keefner's conduct and next determines whether the allegations are sufficient to state a plausible claim between the employment actions and the protected activity of requesting an accommodation.

Although plaintiff alleges that he engaged in the protected activity of reporting Keefner's conduct to the human resource department, plaintiff does not indicate when he made this report. *See id.* ¶ 15.   Thus, at least with respect the April 2011 written reprimand for not attending a meeting and the final warning for allegedly failing to follow Keefner's instructions, *see id.* ¶¶ 17, 20, it is not possible to discern whether the protected activity preceded the alleged adverse action such that the activity could have resulted in the adverse action.   Thus, the complaint does not allege facts sufficient to state a plausible causal connection between the protected activity and the employment action.   *Cf. Hunt v. Central Consol. School Dist.*, 2013 WL 3214928 (D.N.M. June 12, 2013) (plaintiffs' complaint did not state a plausible claim that a causal connection existed between the protected activity and the materially adverse action because plaintiffs engaged in the protected activity *after* the alleged retaliatory actions).

Even if the Court were to assume that plaintiff reported Keefner's conduct to the human resources department prior to the written reprimand and final warning, the Court nonetheless

---

[7]   The Court already has held that Plaintiff's termination constitutes an adverse employment action within the meaning of the NMHRA, but that on the facts as alleged in the complaint Plaintiff has not stated a plausible claim that the written reprimand or final warning constitute adverse employment actions.   *See supra* pp. 19, 20.   For purposes of deciding the question whether Plaintiff has alleged a plausible claim that a causal connection exists between his protected activities and the reprimands only, the Court assumes that the reprimands constitute adverse employment actions and therefore reaches the question whether plaintiff has alleged plausible facts indicating that the reprimand and warning were causally connected to the protected activities.

concludes that the allegations in the complaint are not sufficient to state a plausible claim that reporting the hostile work environment was causally connected to the subsequent adverse actions. To withstand a Rule 12(b)(6) motion to dismiss, a plaintiff need not allege all of the facts that would be necessary to support his claim at the trial stage, but rather need only allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555 (citation omitted); *Khalik*, 671 F.3d at 1193. Plaintiff has not satisfied this standard.

Absent from the complaint are any allegations suggesting that defendant acted with a retaliatory motive when it reprimanded and terminated plaintiff. Although a retaliatory motive may be inferred when an adverse action closely follows a protected activity, *see Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citations omitted),[8] because plaintiff does not allege *when* he complained to the human resources department, the Court cannot determine whether the protected activity occurred in sufficiently close temporal proximity to the adverse action to infer a causal connection between the two events. *Cf. id.* Thus, because the complaint contains no allegations from which the Court could infer a retaliatory motive, the Court concludes that the complaint does not state a claim for retaliation based upon plaintiff's protected activity of reporting Keefner's conduct. The Court therefore grants defendant's motion to dismiss the retaliation claim to the extent that claim is premised on the protected activity of reporting Keefner's conduct to the human resources department.

In contrast, plaintiff identifies precisely when—namely, on May 6, 2011—he engaged in the protected activity of requesting an accommodation. *See* Compl. ¶ 19. Plaintiff also alleges that "[i]n less than one month of requesting the accommodation, Plaintiff was given a final

---

[8] Federal authorities may inform the Court's analysis of Plaintiff's NMHRA claim. *See supra* note 3.

warning for allegedly failing to follow his supervisor Keefner's instructions," and that "[o]n June

10, 2011, Plaintiff was terminated for allegedly missing a meeting," *id.* ¶¶ 20, 21.   Thus, it is clear

from the allegations in the complaint that the protected activity of requesting an accommodation

predated the alleged adverse actions.

Plaintiff also alleges that the subsequent adverse actions occurred in close proximity to the

protected activity.   Specifically, plaintiff alleges that the protected activity occurred within four

and one-half weeks of the final warning and the ultimate termination.   *See id.* ¶¶ 19-21.   As

discussed, a plaintiff may meet his prima facie burden of establishing a causal connection between

a protected activity and a materially adverse employment action through evidence establishing

temporal proximity.   *See Xia v. Salazar*, No. 12-4034, 2012 WL 5909096, at *2 (10th Cir. Nov.

27, 2012); *Anderson*, 181 F.3d at 1179 (a retaliatory motive may be inferred when an adverse

action closely follows protected activity) (citations omitted).   The Tenth Circuit has concluded

that "[a] six-week period between protected activity and adverse action may be sufficient, standing

alone, to show causation."   *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004).

Because the complaint alleges that the adverse employment actions occurred within four and

one-half weeks of the protected activity of requesting an accommodation, the Court

concludes—based upon temporal proximity alone—that the complaint states a plausible claim that

a causal connection exists between the adverse action and protected activity.

The Court is not persuaded to find otherwise by defendant's argument that plaintiff fails to

allege facts indicating a nexus between the person taking the adverse action of firing plaintiff and

the person to whom plaintiff made the request for an accommodation.   *See* Mem. at 8 ("While in

the body of the Complaint, plaintiff states that he complained that 'he was being subjected to a

hostile work environment,' there is no nexus between the person(s) to whom he complained and

the person who fired him.").   In the context of employment discrimination cases, the Tenth Circuit has suggested that plausibility may require less specific pleadings, "because in [these] cases where the employers are large corporations, the employee may not know who actually fired [him] or for what reason."   *Khalik*, 671 F.3d at 1190; *see also Hunt v. Central Consolidated Sch. Dist.*, No. 11-CV-1144 JB/WDS, 2013 WL 3214928, at *28 (D.N.M. June 12, 2013).   Thus, plaintiff's failure to specify to whom he requested an accommodation or by whom he was fired does not in and of itself render plaintiff's claim implausible.   Rather, to withstand a Rule 12(b)(6) motion, plaintiff need only allege enough facts to state a plausible claim.   *See Twombly*, 550 U.S. at 555 (a plaintiff need not allege all of the facts that would be necessary to support his claim at the trial stage, but rather need only allege "enough facts to state a claim to relief that is plausible on its face") (citation omitted).   Plaintiff has satisfied this standard.

Moreover, the Court rejects defendant's characterization that "nothing other than sheer speculation . . . link[s the ]complaint[] and [plaintiff's] termination to a discriminatory or retaliatory motive."   Mem. at 8.   Plaintiff alleges that his termination occurred within four and one-half weeks of his protected activity of requesting an accommodation for his depression.   *See* Compl. ¶¶ 19-21.   As discussed, the Court can infer retaliatory motive from the temporal proximity of a protected activity and a subsequent adverse employment action.   *See Anderson*, 181 F.3d at 1179.

The Court likewise is not persuaded by defendant's argument that plaintiff's retaliation claim must fail because plaintiff provides no information regarding the type of accommodation requested, why the accommodation was requested, or to whom the request was made.   *See* Mem. at 7.   Admittedly plaintiff provides few details about his request for accommodation.   However, for purposes of stating a retaliation claim based upon the protected activity of requesting an

24

accommodation—as opposed to stating a discrimination claim based upon a failure to accommodate, *see supra* p. 11—the details defendant seeks are not essential to state a plausible claim. Plaintiff has alleged facts indicating that he requested an accommodation, that he thereafter was terminated, and that his request for accommodation and termination were causally connected. *See* Compl. ¶¶ 19, 21. These facts are legally sufficient to satisfy the 12(b)(6) standard in the context of a retaliation claim. Therefore, the Court denies defendant's motion to dismiss the retaliation claim to the extent the claim is premised on the protected activity of requesting an accommodation.

## CONCLUSION

For the foregoing reasons, IT THEREFORE IS ORDERED that defendant CTSC, LLC's Motion to Dismiss Plaintiff's Complaint [Doc. 7] is hereby GRANTED IN PART and DENIED IN PART as follows:

(1)    Defendant's motion to dismiss plaintiff's age-based discrimination claim under the NMHRA is DENIED;

(2)    Defendant's motion to dismiss plaintiff's disability-based discrimination claim under the NMHRA is GRANTED; and

(3)    Defendant's motion to dismiss plaintiff's retaliation claim under the NMHRA is GRANTED to the extent the claim is premised on the protected activity of reporting Keefner's conduct to the human resources department and DENIED to the extent the claim is premised on the protected activity of requesting an accommodation.

Dated this 26th day of September, 2013.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

25